MARK ANTHONY ADELL,

        Plaintiff,

    v.                                              Case No. 19-C-868

GARY BOUGHTON, JOLINDA WATERMAN,
F. KUBER, B. KRAMER, JAMES GREER,
MS. DRONE, and JANE DOE,

        Defendants.

## SCREENING ORDER

On December 17, 2019, this court screened Plaintiff Mark Anthony Adell's amended complaint under 42 U.S.C. § 1983, dismissed the complaint for running afoul of Federal Rules of Civil Procedure 18 and 20, and ordered Plaintiff to file a compliant complaint by January 15, 2020. On January 3, 2020, Plaintiff filed a second amended complaint, which is now before the court for screening.

### SCREENING OF THE SECOND AMENDED COMPLAINT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997).

To state a cognizable claim under the federal notice pleading system, Plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

## ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Plaintiff sues James Greer; Wisconsin Secure Program Facility (WSPF) Warden Gary Boughton; Dodge Correctional Institution Doctor F. Kuber; and Registered Nurses Jolinda Waterman, Ms. Drone, B. Kramer, and Jane Doe. All Defendants except Doctor Kuber are alleged to be employees of the WSPF. Plaintiff sues Defendants in their individual and official capacities.

Plaintiff alleges that he suffers from numerous medical issues, including ulcerative colitis, Crohn's disease, and migraines. On August 30, 2018, while he was incarcerated at WSPF, he submitted a request for medical attention for "new bowel disease symptoms." Dkt. No. 17 at 4. Nurse Drone responded the next day that she had scheduled Plaintiff to be seen in the Health Services Unit (HSU). By September 5, 2018, Plaintiff had not been seen by a doctor, so he submitted another request for treatment. Nurse Jane Doe responded that the doctor was not in the prison until September 17, 2018, but Plaintiff was scheduled to see him that day. Plaintiff alleges that Jane Doe did not contact the on-call doctor, who he says is required to address medical issues that the nurses cannot. The next day, Plaintiff submitted another request for treatment, in which he told the nurse, "[I]t's clear my problem will persist" until the September 17, 2018 appointment.

2

*Id.* at 5. Nurse Kramer responded to Plaintiff's request and reiterated that he was on the doctor's "schedule to be seen soon." *Id.* Plaintiff also wrote to Nurse Waterman, who Plaintiff alleges manages the entire WSPF HSU, to state his displeasure in not being treated promptly. Plaintiff alleges that Kramer "triaged" Plaintiff's request for treatment and "respond[ed] over and above on behalf of Waterman." *Id.* at 6.

On September 10, 2018, despite being told he would have to wait another week, Plaintiff was taken to the HSU for treatment. Doctor Patterson (who is not a Defendant) diagnosed Plaintiff as suffering from a severe perirectal abscess that he could not treat. He sent Plaintiff to the emergency room at Boscobel Area Hospital, where hospital staff provided stabilizing treatment before sending Plaintiff to the University of Wisconsin Hospital in Madison for advanced treatment. Plaintiff returned to WSPF two days later.

Plaintiff alleges that on September 18, 2018, he suffered "life threatening side effects" from the surgery he had undergone a week earlier. Dkt. No. 17 at 7. He was taken to the HSU for emergency treatment before being sent again to the hospital in Boscobel and then to the one in Madison. He returned to WSPF on September 21, 2018.

Plaintiff alleges that when he was discharged from the hospital on September 21, 2018, he opted not to accept medications recommended to him because the medical staff at the HSU had not provided proper patient education on what medications were prescribed or their purpose. He alleges that Waterman retaliated against him for not taking his medications and for previous complaints he filed against her by attempting to intimidate, harass, and coerce him into taking the medications. Plaintiff alleges he also was placed into medical observation, which entailed segregation, constant surveillance, and perpetual light. While in medical observation, Plaintiff allegedly was denied other medications previously prescribed to control his bowel disease and

3

other health conditions. Waterman also sought an *ex parte* court order to receive "total custody and control over Plaintiff and his right to refuse medical treatment, including the medications." Dkt. No. 17 at 8–9.

Plaintiff alleges that the abscess later became reinfected but was treatable with antibiotics. He alleges that his decision to forego a second surgery in lieu of the antibiotics made Waterman "livid." Dkt. No. 17 at 9. She allegedly again retaliated against Plaintiff by having him transferred to the infirmary at Dodge Correctional Institution, even though he alleges he did not meet the criteria to be housed there.

Plaintiff alleges that he suffered needless pain from the delay in receiving treatment from August 30, 2018, until September 10, 2018. He alleges that he likely would not have needed surgery had he received prompt treatment and would not have suffered the complications from the surgery or any of Waterman's alleged retaliation had he been seen in the HSU when he first requested treatment. Finally, Plaintiff alleges that Waterman, Greer, and Boughton are culpable for not maintaining adequate staff at WSPF to ensure he received prompt and proper treatment. Plaintiff also faults WSPF for not having a screening process or sick-call process in place to avoid delays in treatment. Plaintiff seeks compensatory, nominal, and punitive damages and declaratory judgment against all Defendants.

## THE COURT'S ANALYSIS

Plaintiff seeks to sue Defendants in their official capacities. Claims against a government official in his official capacity represent another way to plead an action against the entity that he represents or for which that official works. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). The claims against Defendants in their official capacities are construed as having been brought against the WDOC,

4

the agency for which they work. *Graham*, 473 U.S. at 165–66. Because claims against the WDOC are "no different from a suit against the State itself," these claims are construed as having been brought against the State of Wisconsin. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Graham*, 473 U.S. at 165–66; *Monell*, 436 U.S. at 690 n.55). But a state is not a "person" against whom Plaintiff may recover monetary damages under 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003). And Plaintiff is otherwise barred under the Eleventh Amendment from seeking relief against Wisconsin or its agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985), and *Cory v. White*, 457 U.S. 85, 90–91 (1982)). Accordingly, Plaintiff's official capacity claims are dismissed.

The court reviews Plaintiff's claims against the defendants in their individual capacity regarding the denial or delay of medical care under the Eighth Amendment, which prohibits cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

To state a valid Eighth Amendment claim, the inmate must allege both that he "suffered from an objectively serious medical condition" and that Defendants were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the

5

Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837; *Perez*, 792 F.3d 768, 776 (7th Cir. 2015).

Plaintiff alleges that he had to wait eleven days between his initial complaints of pain and illness, and when he saw a doctor for treatment. He alleges that there was an on-call doctor who could have seen him during that time. He also alleges that because of the delay in treatment, his condition worsened to the point that he required emergency surgery for a life-threatening abscess and suffered serious complications afterwards. These allegations are sufficient at this stage to state an Eighth Amendment claim for delay of treatment against Nurses Drone, Kramer, and Jane Doe, who allegedly received Plaintiff's request for treatment but failed to contact the on-call doctor about treating Plaintiff. *See Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (citing *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008)) (noting that evidence of inexplicable delay in proving medical treatment may support an Eighth Amendment claim).

Plaintiff does not state an Eighth Amendment claim against Greer, Boughton, or Waterman. He does not allege that Greer or Boughton had any part in his medical treatment, and Waterman's involvement came later. He alleges only that they should be held responsible in their supervisory positions at the prison or in the HSU. As this court told Plaintiff in a previous order, "the doctrine of respondeat superior (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983." Dkt. No. 10 at 4 (citing *Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992)). Because Greer and Boughton were not personally involved in Plaintiff's delay of medical treatment, they cannot be held responsible for the delay. And although Plaintiff alleges that he sent a complaint to Waterman about the delay, he does not allege that she received his complaint or personally responded to it, or that she is responsible for him not receiving timely treatment. Instead, Plaintiff alleges that R.N. Kramer triaged his HSR that was addressed to Waterman and

6

responded on behalf of Waterman.  Waterman may not be held liable for the actions of R.N. Kramer, absent an allegation that she personally knew of Plaintiff's condition and was deliberately indifferent to it.  *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

Plaintiff also alleges that Greer and Boughton are responsible for staffing shortages that led to the delay in his medical treatment.  The Court of Appeals for the Seventh Circuit has noted that systemic deficiencies in staffing may constitute deliberate indifference if the inmate shows that the deficiencies are gross, such that "the inmate population is effectively denied access to adequate medical care."  *Rasho v. Walker*, 376 F. Supp. 3d 888, 914 (C.D. Ill. 2019) (quoting *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983)).  However, Plaintiff does not allege gross deficiencies at WSPF.  He alleges that he was told that the doctor was unavailable until September 17, 2018, but then saw that doctor on September 10, 2018.  In the meantime, he alleges that there was an on-call doctor he could have seen, but the nurses simply failed to contact the doctor and request he or she see Plaintiff.  Although there may have been less than ideal staffing at the time, Plaintiff's allegations do not suggest it was not grossly deficient such that it violated his constitutional right to adequate medical care.

Plaintiff also claims that Waterman retaliated against him for refusing to take certain medications and filing complaints against her.  To state a claim of retaliation, Plaintiff must allege that "he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two."  *Felton v. Huibregtse*, 525 F. App'x 484, 486 (7th Cir. 2013) (citing *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010), and *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Plaintiff may have a protected "liberty interest in refusing forced medical treatment while incarcerated," *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019) (citing *Washington v. Harper*, 494 U.S. 210, 221–22 (1990)), although it is not clear whether that activity qualifies as "protected activity" for purposes of a First Amendment retaliation claim. *E.g. Conner v. Hoem*, 768 F. App'x 560, 564 (7th Cir.), cert. denied, 140 S. Ct. 273 (2019) (assuming, without deciding, that refusing medical treatment qualifies as a protected activity). Nonetheless, the filing of previous complaints against an official is protected activity. *See Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006). Plaintiff also alleges that Waterman had Plaintiff moved to medical observation status, denied him certain medications, and eventually had him transferred to another institution because of the complaints he filed and medications he refused to take after his surgery. Although Plaintiff does not have a constitutional right to a particular housing assignment or prison assignment, Waterman's alleged movement of Plaintiff within and without the prison may still violate the Constitution if she did so "with an improper, retaliatory motive." *See Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (quoting *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005)). Because Plaintiff alleges Waterman moved and transferred him as an act of retaliation, he states a First Amendment claim against Waterman.

Plaintiff does not state a claim against Kuber. He does not allege any misconduct by Kuber or explain Kuber's involvement in Plaintiff's medical treatment. When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).

## CONCLUSION

The court finds that Plaintiff may proceed on the following claims: 1) an Eighth Amendment claim for delay of adequate medical treatment against Defendants Drone, Kramer, and Jane Doe; and 2) a First Amendment claim of retaliation against Defendant Waterman.

**IT IS FURTHER ORDERED** that Defendants Greer, Boughton, and Kuber are **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Defendants Waterman, Drone, and Kramer. Service upon Nurse Jane Doe must await Plaintiff's identification of her.

Because Plaintiff does not know the names of the Jane Doe nurse, he must use discovery to learn her identity. Once the attorney for Defendants has entered a notice of appearance, Plaintiff may serve discovery on Defendants (by mailing it to their attorney at the address in his or her notice of appearance) to get information that will help him identify the real names of the Doe nurse. For example, Plaintiff may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or request document under Fed. R. Civ. P. 34. Once Plaintiff identifies the Jane Doe Nurse, he must file a motion to substitute her name for the Jane Doe placeholder. Plaintiff must identify the real name of the Jane Doe nurse **within sixty days** of Defendants' attorney filing an appearance or file a letter explaining why he is unable to do so. If he does not do either of these things, the court may dismiss the claims against the Jane Doe nurse based on Plaintiff's failure to pursue it diligently. Civil L. R. 41(c).

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, Defendants shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order. Once Defendants file an answer to the complaint, the court will enter a scheduling order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is in effect at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility. If Plaintiff is no longer incarcerated at a Prisoner E-Filing Program institution, he will be required to submit all correspondence and legal material to:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal

10

Case 1:19-cv-00868-WCG   Filed 05/06/20   Page 10 of 11   Document 18

rights of the parties. Therefore, failure to provide your correct address could result in dismissal of your case for failure to prosecute.

Dated at Green Bay, Wisconsin this 6th day of May, 2020.

s/ William C. Griesbach  
William C. Griesbach, District Judge  
United States District Court